EDWARD CUMMERFORD and WIFE, Appellants, *v.* DANIEL McAvoy, Appellee.

### APPEAL FROM MORGAN.

A party is not justified in repeating a slanderous charge, although he names the author at the time, unless it appears that he acted without any malicious intent. The *quo animo* with which the charge is repeated, is the controlling consideration.

THIS cause was heard before WOODSON, Judge, at October term, 1853, of the Morgan Circuit Court.

D. A. SMITH, for appellants.

M. McCONNEL, for appellee.

TREAT, C. J. This was an action for slander, brought by Edward and Bridget Cummerford against McAvoy. The declaration alleged that "in a certain discourse, which the defendant then and there had with one James Gorman, of and concerning the plaintiff, Bridget Cummerford, and of and concerning a conversation that the defendant had with Patrick Devine concerning the said Bridget, the defendant did slanderously, falsely, and maliciously speak, in the presence and hearing of said James Gorman, these false, scandalous, and malicious words, of and concerning the said Bridget: He (meaning the said Patrick Devine) said that she (meaning the said plaintiff) stole some things out of a store in town, (meaning the town of Jacksonville,) and some other things out of Dennis Shields' trunk; the said defendant thereby intending and meaning to charge that the said Bridget had been and was guilty of the crime of larceny, when in fact and in truth the said words were not spoken by the said Patrick Devine of and concerning the said Bridget."

The defendant pleaded three pleas: 1. Not guilty. 2. That Bridget Cummerford did steal from a store in Jacksonville, "five bolts of ribbon, two boxes of laces, five collars, two pair of stockings, and other articles to this defendant not precisely known." 3. That Bridget Cummerford did steal from Dennis Shields' trunk "one cape, one dress, five pair of socks, and other articles to this defendant unknown."

The plaintiffs introduced James Gorman, a brother-in-law of

plaintiff Bridget, who testified, that he called to see the defendant one evening on business, and found him in bed; after talking about the business in hand, witness inquired of defendant what he had said about Bridget Cummerford, and he replied, "that Patrick Devine had told him that Bridget Cummerford had stolen some things out of a store in town, and also some things out of Dennis Shield's trunk, and would steal any thing that would not burn her." The plaintiffs then called Patrick Devine, who testified, that he and defendant were at work together, when the name of Cummerford was mentioned, and defendant asked him, "if that was the Cummerford's wife who he heard took some things out of a store in town;" witness replied that "he had heard she took some things out of a store in town, and out of Dennis Shield's trunk," but did not tell him that she had stolen any thing.

The defendant called Mrs. Murrey, who testified, that Bridget Cummerford was in a store in Jacksonville with witness, and bought a dress; witness saw her take from a box that was set over to her on the counter by the person in the store, and while he was gone to another part of the store, three or four spools of thread, a card of buttons, and two bunches of braid, and put them into the folds of the dress; witness said to her, "He will see them," and she replied, "I reckon not;" Dennis Shields' wife was dead, and he kept his trunk at Cummerford's; witness knew that Bridget Cummerford took a part of a dress from the trunk to make her a cape, and heard her say that she had got that much out of Dennis any how. Dennis Shields testified, that he left his trunk at Cummerford's, and some socks and remains of dresses were taken out of it; and he afterwards got most of the missing articles from Bridget Cummerford.

The plaintiffs then proved by two witnesses, that they were well acquainted with the general character of Bridget Cummerford, and that it was good.

The court instructed the jury, at the instance of the defendant, that "If they believe from the evidence that the defendant, in speaking the words proved, was not actuated by malice, but repeated them as he had heard them from others, without intending to impute to Bridget Cummerford a crime, and without malice towards her, they must find for the defendant."

The jury returned a verdict for the defendant, and the court refused to grant a new trial.

It was formerly held, that an action would not lie against a party for oral slander, if at the time of speaking the words, he gave the name of the author of the slanderous charge. Northampton's case, 12 Coke, 133; Davis v. Lewis, 7 Durnford and

East, 17; Maitland *v.* Goldney, 2 East, 426. But the modern and more reasonable doctrine is, that a party is not justified in repeating a slanderous charge, although he at the time names the author, unless it appears that he acted without any malicious intent. The slander, though accompanied with the name of the author, may be repeated for a malicious purpose, and with mischievous effect. The *quo animo* with which the charge is repeated, is the controlling consideration. Lewis *v.* Walter, 4 Barnewall and Alderson, 605; De Cressigney *v.* Wellesley, 5 Bingham, 392; McPherson *v.* Daniels, 10 Barnewall and Cresswell, 263; Dole *v.* Lyon, 10 Johnson, 447; Hayes *v.* Leland, 29 Maine, 233; Johnson *v.* Lance, 7 Iredell, 448; Miller *v.* Kerr, 2 McCord, 285; Crane *v.* Douglass, 2 Blackford, 195; Church *v.* Bridgman, 6 Missouri, 190. This principle was not violated by the instructions of the court. If the defendant repeated the charge as he had heard it from Devine, at the same time referring to him as the author, without any intention to injure or defame the plaintiff, he was not liable. But if he was actuated by malice, the fact that he repeated the charge with the name of the author, afforded him no protection. It was the province of the jury, upon a consideration of all the circumstances of the case, to determine whether the defendant thus repeated the charge, and whether he acted maliciously in so doing. The court did not err in refusing to grant a new trial. There was evidence tending to prove the truth of the charge. We cannot say that the verdict was manifestly against the weight of evidence. It may be that the pleas were defective, in not describing with more certainty the articles taken. But it was the fault of the plaintiffs to take issue upon such general and indefinite allegations. By demurring to the pleas, they might have compelled the defendant to be more specific in his justification.

The judgment is affirmed.

*Judgment affirmed.*