Thomas *v.* Dunaway.

RICHARD S. THOMAS, Appellant, *v.* JACOB DUNAWAY, Appellee.

APPEAL FROM MORGAN.

A general objection to a deposition, is an objection to the substance, and not to the form, and cannot be taken on the trial of the case.

In an action of libel, the defendant, by pleading the general issue, virtually admits the falsehood of the statements on which the action is based, but if it is proved that he did publish them, he may then, under that issue, show any circumstance in mitigation, which tends to disprove malice, but does not tend to prove the truth of the charge.

The defendant may therefore prove prior publications by the plaintiff, of a provoking nature, in mitigation.

If a plea of justification of slanderous publications is made in good faith, and evidence is introduced honestly, for the purpose of supporting it, such evidence should be considered by the jury in mitigation of damages, even though it is insufficient to prove the truth of the plea.

But if, on the contrary, the plea and the evidence under it, were resorted to solely for the purpose of further injuring the plaintiff, then it is only an aggravation of the offense.

These are questions for the consideration of the jury.

The law does not presume that because money has been entrusted to an individual, he has embezzled or appropriated it to his own use.

The burthen of proof is on the person making the charge of embezzlement to sustain it. It is not incumbent on the other party to show what has become of the money, even though it is traced to his hands.

THIS is an action on the case, brought by Dunaway against

Thomas, for libel, based on a newspaper publication, which charged that Dunaway had been, in the State of Pennsylvania, many years before, entrusted with a drove of cattle, belonging to his father and brother; that he received the purchase money for the cattle, and did not account for the same, whereby his father and brother were broken up in their business; and that the plaintiff had brought money to Illinois shortly after the cattle transaction took place.

The defendant pleaded the general issue, and justification.

On the trial the plaintiff proved the publication, and that Thomas was worth from $10,000 to $20,000.

The defendant, Thomas, in his defense, introduced the brother of the plaintiff, alluded to in the publication, who testified that the charges in the publication were true, excepting the bringing of money to Illinois, about which he knew nothing.

Defendant introduced evidence that the charges in the publication were not fabricated by himself, but were communicated to him under circumstances that justified him in believing that the said charges were true.

Also introduced evidence showing that plaintiff, Dunaway, had brought money to Illinois, on his first coming to the State, and shortly after the cattle transaction in Pennsylvania.

Defendant offered to prove by M. H. L. Schooley, that the statement in the publication, that the plaintiff brought money to Illinois shortly after the cattle transaction, was true, and was communicated by witness, to defendant Thomas, before the publication of the article sued on, and also that all the charges in the publication sued on, were communicated to Thomas before the publication, and under circumstances that justified him in believing that said charges were true; which evidence was rejected by the court.

Defendant introduced, in mitigation of the damages, two newspaper articles published by defendant Dunaway, over his own signature, one five days, and the other twelve days before the publication of the article sued on, charging Thomas with frauds and crimes, and challenging and inviting Thomas to a newspaper controversy; Dunaway's first article being the

first of the newspaper controversy. The article sued on was a reply to Dunaway's articles, and particularly to his said second article; and the following words set out in the declaration as actionable, to wit: "Steal the widow's mite and orphan's substance," were words contained in Dunaway's said second article against Thomas. The newspapers in which these publications were made, were weekly papers, published in the town where both parties lived.

The brother of Dunaway (the witness who testified to the truth of the charges in the article sued on) was then impeached by the evidence of one H. Tate, who testified that he told witness, Tate, after the publication sued on was made, that all the statements in that publication were untrue.

The witness Tate was then impeached by eleven witnesses, who testified that his character for truth and veracity was bad, and that they would not believe him on oath; and in turn, his character for truth and veracity was sustained by seventeen witnesses, who swore that his character for truth and veracity was good, and that they would believe him on oath.

The following instructions were given on the part of the plaintiff, which were all excepted to:

1. If the jury believe, from the evidence, that the defendant, Thomas, published the libel of and concerning the plaintiff, as charged in the plaintiff's declaration, then the law presumes malice on the part of said Thomas against said Dunaway, and it rests upon the defendant, Thomas, to rebut that presumption, and if he has not done so to the satisfaction of the jury, then the jury must find for the plaintiff any amount of damages not exceeding ten thousand dollars, unless the defendant has established to the satisfaction of the jury the plea of justification.

2. If the jury believe, from the evidence, that the defendant published the libel as charged in the plaintiff's declaration, and has failed to prove the truth of the charges in said plea of justification made against said plaintiff, then the jury must find a verdict for the plaintiff, and assess his damages to such a sum as the jury believe, from the evidence, said plaintiff ought to recover, not exceeding ten thousand dollars.

3. The jury, in making up their verdict, if they find for plaintiff, may take into consideration the circumstances of the defendant as to wealth and possession of property, and said jury may give a verdict for such a sum as, from the evidence, they believe the said defendant ought to pay under the circumstances.

4. The court instructs the jury on the part of the plaintiff, that if they believe, from the evidence in the case, that the plaintiff has proved the publication of libel, as charged in the plaintiff's declaration, and that the defendant has failed to prove by preponderance of evidence, the truth of the plea of justification as pleaded by him, then and in such case the jury should render their verdict in favor of the plaintiff, for such an amount, not exceeding ten thousand dollars, as they shall believe he is entitled to recover.

5. That if the jury believe, from the evidence, that the defendant composed and published, or caused to be published, the printed article in plantiff's declaration mentioned, as therein mentioned, the jury will find the defendant guilty, unless they further believe, from the evidence, that the charges and statements and insinuations in said printed article are true; and if the jury find the defendant guilty, the amount of damages is left to their discretion, and they will find such damages for the plaintiff as they believe, under all the circumstances of the case, he ought to receive of the defendant, not exceeding ten thousand dollars.

5. The court instructs the jury, that unless the defendant has proved his justification as full and as broad as the charge in the pleas herein, then and in such case the plea of justification is not proved, and should not be considered by the jury.; and if they further believe, from the evidence, that the plaintiff has proved, by the evidence, the publication of the libel as charged, then the jury should find for the plaintiff, and render a verdict against the defendant for such sum, not exceeding ten thousand dollars, as they shall believe, from the evidence in the case, the plaintiff is entitled to.

The court then refused to give the following instructions for the defendant, to which ruling the defendant excepted:

3. That in the event that the jury do not find the plea of justification to be true, then the jury, in estimating the amount of damages, may properly take into their consideration, such facts as may show whether or not the publication complained of was made by Thomas, in the *bona fide* belief that the publication was true. And the jury may also properly take into their consideration, in the estimation of damages, the articles which may have been proved to have been published by Dunaway injurious to the reputation of Thomas, if those articles were proven to have been made prior to, and in their statements were connected with, the publication complained of in the declaration.

4.' The filing of the plea of justification does not necessarily aggravate the damages, if the jury, from the testimony, believe that the defendant insisted upon such plea, believing in good faith that he could prove it.

5. Testimony which is purely of a negative character, so far as it relates to the existence or non-existence of facts, ought not to be regarded by the jury, and so far as declarations have been made by witnesses, that they know nothing about the facts material in this case, such declarations are excluded by the court from the consideration of the jury.

7. That if the jury believe, from the testimony, that the proceeds in money of a drove of cattle, belonging to Jesse E. Dunaway and Matthew Dunaway, came to the hands of the plaintiff, Dunaway, the burden of proving that he had accounted for that money, is thrown upon the plaintiff.

The foregoing is all the evidence given in the case.

Verdict of jury for plaintiff, and damages assessed at three thousand dollars.

Defendant then moved the court to set aside said verdict and grant a new trial—

Because the court refused to admit the testimony of M. H. L. Schooley, by which defendant proposed to show that defendant received information of the truth of the statements contained in the publication, which is the foundation of the action, under circumstances that justified the defendant in believing those statements to be true.

25

Thomas *v.* Dunaway.

Because the court erred in giving instructions asked for by the plaintiff, numbers 1, 2, 3, 4, 5, 6, and also another marked 5.

Because the court erred in refusing instructions asked for by the defendant, numbers 3, 4, 5, 7.

Because the verdict is against the law and testimony.

Because the damages are excessive.

Because the depositions of William Dunaway and John Weltner were not suppressed.

Which motion was overruled by the court, and to which ruling defendant then excepted.

The depositions of John Weltner and William Dunaway, were taken by the plaintiff under a commission issued from the Cass Circuit Court, Illinois, and were directed to J. D. Springer, Esq., a justice of the peace, in and for Fayette county, in the State of Pennsylvania, to which commission were attached six interrogatories on the part of the plaintiff, and twenty-eight interrogatories on the part of the defendant, Thomas.

In the deposition of John Weltner and William Dunaway, no answers to twenty-five of the cross-interrogatories by defendant were returned, but the magistrate taking the depositions, has made the following entry on his depositions:

"The defendant's counsel waived the putting of the other interrogatories."

The certificate of the official character of the magistrate Springer, is in the following form, to wit:

PENNSYLVANIA, } *ss.*
FAYETTE COUNTY,

I, Thomas B. Searight, Prothonotary of the Court of Common Pleas, in and for said county, do hereby certify that J. D. Springer, Esq., before [SEAL.] whom the foregoing and within depositions appear to have been made, was at the date thereof, and now is, an acting Justice of the Peace, in and for said county, duly commissioned and qualified, and that he is duly authorized to take the acknowledgment of deeds and other instruments of writing, and administer oaths, and that the signature thereto, purporting to be his, is genuine.

In testimony whereof, I have hereunto set my hand and the seal of the said court at Uniontown, this 7th day of December, A. D. 1860.

T. B. SEARIGHT, *Prothonotary.*

Defendant Thomas moved in the Cass Circuit Court, before change of venue from Cass to Morgan, to reject depositions of John Weltner and William Dunaway, for the following reasons :

Because the certificate of the magistrate taking the depositions is defective.

Because the certificate does not show that the depositions were reduced to writing by the magistrate.

Because the magistrate did not certify answers to twenty-five of the interrogatories of defendant Thomas.

Affidavit of defendant that he did not authorize any one to appear and waive the putting of any interrogatories, attached to the commission.

Motion to reject depositions overruled, and exception taken by defendant, as appears by a bill of exceptions signed by D. M. WOODSON, Judge of the Morgan Circuit Court.

Judgment on verdict for three thousand dollars, and appeal.

The following are the errors assigned :

The court erred in overruling the appellant's motion to suppress the depositions of John Weltner, William Dunaway and James Dunaway.

The court erred in permitting said depositions to be read to the jury.

The court erred in refusing to admit the evidence of M. H. S. Schooley, as stated in the bill of exceptions.

The court erred in giving to the jury the instructions asked by plaintiff below, numbered 1, 2, 3, 4, 5, 6, and another marked 5.

The court erred in refusing to give to the jury the instructions asked by appellant, numbered 3, 4, 5, 7.

The court erred in overruling appellant's motion for a new trial.

The court erred in rendering judgment for appellee.

R. S. THOMAS, and DUMMER & LOGAN, for Appellant.

1. The pleading of inconsistent pleas under our statute is a matter of right. The Statute of Illinois, page 823, Purple's

edition, reads as follows: " The defendant may plead as many matters of fact as he may deem necessary for his defense."

When the pleas of justification and general issue are both in, neither should be permitted to restrict the rights secured by either plea if pleaded alone. Neither should embarrass the other, either in the evidence to be admitted, or in the instructions to be given by the court. Such is a fair construction of our statute.

Our statute is a copy of the Virginia statute, which was passed in 1788, and reads thus: " The plaintiff in replevin, and the defendant in all other actions, may plead as many several matters, whether of law or fact, as he may think necessary for his defense." See Virginia Statutes at Large, printed in 1808, vol. 12, p. 745.

The Virginia statute has also been adopted by the States of Kentucky and Alabama, and the courts of those States have adopted the construction we contend for, that when the pleas of the general issue and justification are both in, the defendant has the same advantages he would have under each plea, if pleaded alone. When the statute of another State is adopted, we adopt the construction (if not against some public policy) which the courts of that State have given the statute. 2 B. Monroe, 213; 8 Leigh, 552, 553; 18 Alabama, 631; 20 Alabama, 413; 14 Ill. 425.

It is admitted that the New York and Massachusetts courts have created a system of law on this subject that is inconsistent with the position we assume. They have generally decided, that where the general issue and justification are both pleaded, evidence in mitigation of damages is excluded, which would be admissible under the general issue if pleaded alone; that the plea of justification is a reiteration of the slander, and in some cases, that the plea of justification may be used to prove the publication.

The New York and Massachusetts courts have always acted with reference to the statute of Anne, or similar statutes, which allowed double and inconsistent pleas, not as a matter of right, but by leave of the court.

As to statute of Anne, see 1st vol. Chitty's Pleadings, pages 594, 595.

The New York statute is thus: "The defendant in any action may plead as many several matters as he may think necessary for his defense, subject to the power of the court to compel him to elect by which plea he will abide, in cases where he may plead inconsistent pleas." Page 352 of vol. 2, N. Y. Statutes.

When the courts under such statutes grant the privilege of pleading double, there is perhaps some reason for controlling the party who has plead inconsistent pleas in his evidence. But that reason does not exist here, where the privilege of pleading double is matter of right, and not by leave of the court. See *Pope* v. *Welse's Adm'r*, 18 Alabama, 631.

2. If the foregoing position be correct, that Thomas had the same right to introduce evidence in mitigation of damages, and have it considered by the jury, that he would have had if the general issue alone had been pleaded, then the Circuit Court erred in rejecting Schooley's testimony and in its instructions to the jury. Any circumstances which disprove malice, and do not tend to prove the truth, may be given in evidence, under the general issue. *Shehan* v. *Collins*, 20 Ill. 325.

3. We cite the following cases as direct authority for the position that, matters of provocation and similar mitigating circumstances, and especially recent previous publications, may be given in evidence and considered by the jury in mitigation of damages, where the pleas of the general issue and justification are both pleaded. 15 B. Monroe, 198; 1 Md. R. 178; 2 Swann (Tenn.) 32; 13 Pick. 503.

4. We cite the following cases as direct authority for the position that evidence, showing that the defendant in an action for libel was not the fabricator of the charges, and that he received them from others under circumstances justifying the belief that the charges were true, may be admitted in evidence and considered by the jury in mitigation of damages, where the general issue and justification are both pleaded. 3 Washington Circuit Court Reports, 341; 1 Binney, 85, 90.

5. We insist, that under the plea of justification, when pleaded alone or with the general issue, all the facts and circumstances introduced in evidence to prove justification, but which fell short of proving it, should be allowed to be considered by the jury under cautionary instructions from the court, to prevent the misapplication of the evidence, in mitigation of damages. Such evidence could not be introduced under the general issue because that plea gives no notice, and its introduction would be a surprise upon the plaintiff; but when facts and circumstances are properly introduced under the plea of justification, which is notice, justice can be done in this case as in many other cases, only by allowing the jury to consider those facts and circumstances, where they fail to prove justification, either in aggravation or in mitigation of the damages.

The case in 2 Kernan, p. 67, well illustrates the position that justice cannot be done in many cases without allowing the facts introduced to prove justification, but which fail to do it, to be considered in mitigation. The law upon the subject of slander and libel in New York, as created by their courts, became intolerable, and was abolished by statute, which allows, in an action for libel, upon notice, the introduction of the evidence of the truth of the charges, and the consideration of that evidence by the jury in mitigation of damages, though it fails to prove the justification. 15 Ill. 425; 4 Scam. 44.

In the case referred to in 15 Ill. 425, the court seem to have gone to the extent of what we contend for, in principle if not in language. They say that the failure to justify does not necessarily aggravate the damages, and that it is a question for the jury to decide in each case, whether the justification was interposed in good faith.

6. One of the instructions asked for by the defendant Thomas, was in these words: "The filing of the plea of justification does not necessarily aggravate the damages, if the jury, from the testimony, believe that the defendant insisted upon such plea, believing in good faith that he could prove it."

The refusal of the court below to give this instruction, is

in direct conflict with the decision of the court in the case in 15 Ill., above referred to.

7. The damages were excessive, and though the courts are averse to reverse a case on this ground, we believe this to be an exceptional case.

8. The court below erred in not suppressing the depositions of John Weltner and William Dunaway.

These depositions were taken under a commission issued from the Cass Circuit Court, directed to J. D. Springer, Esq., a justice of the peace of Fayette county, Pennsylvania.

There was no certificate of the official character of J. D. Springer, Justice, by the clerk of the "proper court of record." 2 Scam. 348.

There is no evidence on the face of the certificate or otherwise, that the clerk of the Court of Common Pleas had any authority, under the laws of Pennsylvania, to give the certificate which is attached to the deposition; or that there was in said court any record evidence that Springer was a justice. Can the word "proper," in the phrase "proper court of record," be ignored? And will the certificate of the clerk of any court of record be sufficient?

The justice, J. D. Springer, did not return any answers to twenty-five of the cross-interrogatories of defendant Thomas, which were attached to the commission; but certified that "defendant's counsel waived the putting of other interrogatories." Defendant Thomas, in support of his motion, filed an affidavit, denying that he had authorized any one to appear and waive answers to any of the cross-interrogatories attached to the commission.

We insist that the certificate of the waiver is extra official— not authorized by the commission, nor by the statute authorizing the taking of depositions by a commission, and does not, therefore, prove that there was a waiver. It is a nullity.

To the point that depositions will be suppressed, where answers are not returned to all the interrogatories and cross-interrogatories, we cite: 1 Wash. C. C. R. 144; 1 Peters C. C. R. 85; 3 Wash. C. C. R. 109.

To the point that Springer's certificate was extra official,

unauthorized, and proves nothing, we cite : Phil. Ev. 382, 391, and 37 Maine R. 411.

Again, the authority to waive answers to the cross-inter-rogatories, is denied by Thomas' affidavit.

9. The instructions asked for by the plaintiff Dunaway, and given by the court when taken together, were calculated to mislead, and did mislead, the jury in the rendition of their verdict.

POLLARD & Ross, for Appellee.

1. There was no error in overruling the motion to suppress the deposition of Weltner and the two Dunaways; appellant having appeared, by attorney, at the examination of the witnesses, and waived the putting of cross-interroga-tories, thereby waiving his right to except to their formality. Appellant failed to except to the decision of the Cass Circuit Court in overruling the motion to suppress the depositions of the Dunaways and Weltner, as appears by the record, and a party cannot be permitted to assign for error in the Supreme Court, any decision or opinion of the Circuit Court, made during the progress of the cause, in the propriety of which, at the time of its occurrence, he silently acquiesced. *Hill* v. *Ward*, 2 Gilm. 285; *Leigh* v. *Hodges*, 3 Scam. 15; *Dickhert* v. *Durell*, 11 Ill. 72.

The same facts stated in said depositions were proved by Jas. Dunaway, a witness introduced by the plaintiff, and, therefore, their admission could not affect the merits of the case. *Wheeler* v. *Shields*, 2 Scam. 348; 1 Gilm. 425.

2. A defendant in libel cannot show, in mitigation of dam-ages, that he has been informed of libelous matter by another person, and if he could, Schooley was not the proper person by whom to prove what J. E. Dunaway had communicated to appellant, he being the best evidence, and having testified to the same facts on the trial. *Coleman* v. *Southwick*, 9 John. 45; *Treat* v. *Browning and Wife*, 4 Conn. 408; *Mapes* v. *Weeks*, 4 Wend. 659; *Wolcott* v. *Hall*, 6 Mass. 514; *Bush* v. *Prosser*, 1 Kernan, 347; *Sheahan* v. *Collins*, 20 Ill. 325.

3. There was no error in refusing the instructions 3, 4, 5,

and 7. ·It is not error to refuse even a proper instruction, if the court gives other instructions, embracing the correct principle of law involved in the instruction refused. *Bland* v. *The People*, 3 Scam. 364.

All the evidence offered by the defendant below (except the testimony of Schooley to show that Thomas had heard the libelous matter from witness and J. E. Dunaway) was admitted by the court, and by the plaintiff's instructions was fairly submitted to the consideration of the jury in estimating the amount of damages.

4. A court will not grant a new trial, or reverse a judgment on error, because of the admission of improper or the rejection of proper testimony, or for want of proper direction or misdirection of the judge who tried the case, provided the court can clearly see, by an inspection of the whole record, that justice has been done, and that the error complained of could not have affected the merits of the case, or influenced the verdict of the jury. *Gillet* v. *Sweat*, 1 Gilm. 475 ; *Hill* v. *Ward*, 2 Gilm. 285 ; *Blanchard* v. *Morris*, 15 Ill. 35 ; *Young* v. *Silkwood*, 11 Ill. 36 ; *Greenup* v. *Stokes*, 3 Gilm. 202 ; *Wheeler* v. *Shields*, 2 Scam. 349 ; *Bland* v. *The People*, 3 Scam. 364.

5. The damages must be outrageous, otherwise the court will not interfere. *Tillotson* v. *Cheetham*, 2 John. 74 ; *Southwick* v. *Stevens*, 10 John. 443 ; *Coleman* v. *Southwick*, 9 John. 45 ; 16 Ill. 405 ; 2 Gilm. 432.

6. The fact proposed to be proven by Schooley that he had informed appellant (Thomas) that appellee had deposited $1,000 after coming to this country, was immaterial under the pleading in this case ; and the witness, J. E. Dunaway, had already testified that he had communicated the matter charged in the libel complained of to the appellant (Thomas) before the publication of the same.

7. In this State, the rule in relation to mitigating testimony in actions of slander and libel, is : 1st, That defendant may show the general bad character of the plaintiff; and, 2nd, Facts and circumstances which tend to disprove malice,

but do not tend to prove the truth of the charge. 2 Gilm. 140; 20 Ill. 225.

WALKER, J. It was insisted, upon the argument, that the Circuit Court erred in overruling the motion to suppress the depositions of Weltner and William Dunaway. After a careful examination of the record, we are unable to find that any exception was noted, or bill of exceptions signed, showing any objection to that decision. But it is insisted, that on the trial, at a subsequent term, when the depositions were offered to be read in evidence, an objection was taken, and is preserved in the record. This does appear from the bill of exceptions, but no specific grounds of objection seem to have been taken. It was only a general objection, and could only be applied to the substance, and not the form of the depositions. If they were relevant to the issue, they were properly admissible. Objections to form cannot be taken on the trial, and the objections urged against these depositions were only formal, and do not go to their materiality. This error is not well assigned.

It is also insisted, that the court erred in not permitting the witness, Schooley, to testify that appellant, before he made the publication, had been informed by Jesse Dunaway, that all the charges were true. Jesse Dunaway had already testified that he gave the information upon which the appellant made the publication. He had also already testified, that the facts were true, except as it related to depositing the thousand dollars with Mrs. Armstrong, of which he knew nothing. It is true that Tate testified, that Jesse Dunaway said to him, after the article was published, that the charges were not true; but there is no evidence that he denied giving the information to appellant. It would, therefore, seem to be a matter of no consequence, whether Schooley testified to that fact, as it does not seem to have been controverted, that Dunaway did give the information.

Schooley testified, that he informed appellant about the deposit of the thousand dollars. The publications made by

appellee, in reference to appellant, were also in evidence, and subject to the consideration of the jury. Appellant, therefore, seems to have had the benefit of all the mitigating circumstances, and unless the court misdirected the jury, he must have received its full benefit on the trial. As all this evidence was received without objection, no question can arise, whether it was admissible under the pleadings in the case.

It is again insisted, that the court erred in refusing to give appellant's third, fourth, fifth and seventh instructions. The third requested the court to inform the jury, that in estimating the amount of damages, if the plea of justification was not sustained, they should consider whether the publication was made by appellant, in the honest belief that it was true, and in estimating the damages, consider the articles published by appellee prior to that made by appellant, and upon which suit was brought. No reason is perceived why this instruction was not given, although it is contended, that under a plea of justification, nothing can be shown in mitigation.

The defendant, by pleading the general issue, in libel and slander, virtually admits that the plaintiff is innocent of the charge upon which suit is brought. But if, on the trial, it appears that defendant did publish the slanderous matter, he may, under that issue, show any circumstance in mitigation, which tends to disprove malice, but does not tend to prove the truth of the charge. The publications made by appellee against appellant, prior to the publication sued upon, did not tend to prove the truth of the charge, and were, therefore, admissible to mitigate damages under the general issue. These publications, made by appellee, may have shown that they were highly calculated to provoke appellant, and that his act was not of such a wanton, reckless and malicious character as to require severe punishment.

The question still remains undetermined, whether a defendant may, after he has pleaded the truth of the charge, in justification of the publication, and after again repeating the charges and spreading it on the record, on failing to prove its truth, give evidence in mitigation. It seems to be the settled practice in Great Britain, followed by some of the

courts in this country, that he cannot. In other courts, a different rule has obtained. It appears that the practice is not very well settled. But this court, in the case of *Cummerford* v. *McAvoy*, 15 Ill. 311, in which both pleas were filed, held, that the jury might consider the *quo animo* with which the charge was made. That the intention of the party in publishing the slander is the controlling consideration with the jury. It cannot be held that the publication of slanderous matter without malice, is to be punished with the same damages as if it were wantonly and maliciously done.

Again, in the case of *Sloan* v. *Petrie*, 15 Ill. 425, it was said, that a class of cases hold, that where the justification is not fully established, the circumstances proved may be considered in mitigating damages. Numerous authorities are referred to in that case, in support of the doctrine. The court also say, in case a plea of justification is filed, it is the province of the jury to determine whether the circumstances render it an aggravation. It would seem to be apparent, that the converse of that rule should also obtain, if the plea was filed in good faith, and evidence was introduced honestly for the purpose of proving the plea. In such a case the evidence should be considered in mitigation of damages.

If the jury believed, from all the circumstances in the case, that appellant relied upon and was satisfied of the truth of the statements made to him by Jesse Dunaway, and that he was not actuated solely by malignity, they would have been justified in giving less damages than if the publication had been wantonly made. If, on the contrary, he knew that the witness was unworthy of belief, and only resorted to his evidence to further injure and blacken the character of appellee, it would aggravate the damages instead of mitigating the offense. These are properly questions for the consideration of the jury, and were presented by this instruction, which should have been given. In the view we have taken of the case, the fourth should also have been given. But nothing in the record is perceived which required the giving of the fifth.

The seventh instruction was properly refused. The bur-

then of proving that appellee had appropriated the money for which the cattle were sold, had been assumed by appellant.   Nor did it devolve upon appellee to show what disposition he had made of the money, when appellant proved that it came to his hands.   The law does not presume that because money has been entrusted to an individual, that he has embezzled or appropriated it to his own use.   Appellant has asserted in his plea that appellee had appropriated the money, and he must establish its truth or fail in his defense.   It did not devolve upon appellee to disprove the charge.

Although some of appellee's instructions are not drawn with accurate precision, they were not, we think, calculated to mislead the jury, especially when all are considered together, as they no doubt were.   No other error is perceived in this record.   But for refusing to give the third and fourth of the appellant's instructions, the judgment of the Circuit Court must be reversed, and the cause remanded.

*Judgment reversed.*