## Case No. 17,590.

### WHITNEY v. JANESVILLE GAZETTE.

[5 Biss. 330; [1] 5 Chi. Leg. News. 469.]

Circuit Court, W. D. Wisconsin. June, 1873.

LIBEL DEFINED — MALICE — JUSTIFICATION—MITIGATING CIRCUMSTANCES—PLAINTIFF'S BAD CHARACTER.

1. Printed slander is a higher offense than merely speaking the defamatory words.

2. A publication without justification or lawful excuse, and calculated to injure the reputation of another, and expose him to hatred or contempt. is a libel.

3. The words are to be taken in their ordinary sense, and if directly calculated to degrade a man in the estimation of his acquaintances. and to injure his business character, they are actionable per se. without proof of malice or special damages.

4. An account of an assault and battery, if correctly given as an item of local news, cannot be complained of. But though the plaintiff may have been the aggressor, and have violated the law, this did not authorize the writer to go outside of the transaction, and reflect upon the plaintiff's personal and business character, unless the strictures were true.

5. If the charge is false, malice need not be proved. it will be implied. Good motives will be implied from the truth of the charge.

6. The truth of the publication is the only perfect answer and bar. and the justification. to be complete, must be co-extensive with the libel.

7. If mitigating circumstances are offered in evidence. to repel the presumption of malice, it must be shown that the defendant knew of them at the time of making the charge.

8. Defendant may show that plaintiff's reputation sustained no injury, because he had none to lose.

9. He is presumed to be of good character until the contrary is shown, and the burden of proof is on the defendant. It is his general reputation, and not his reputation as to any particular transaction, which is in issue.

This was an action of libel by William H. Whitney against the Janesville Gazette. The alleged libelous publication consisted of an article about three-fourths of a column in length, published in the issue of January 24. 1871, and headed "A Desperate Assault on a Peaceable Citizen." It gave an account of an assault by the plaintiff upon one Tompkins. a jeweler in Janesville. in his store. The plaintiff entered by breaking the glass in the window.

[1] [Reported by Josiah H. Bissell. Esq., and here reprinted by permission.]

dow. The affair took place in one of the most prominent streets in Janesville, and created considerable excitement at the time. The plaintiff laid his damages at $10,000.

I. C. Sloan and H. S. Orton, for plaintiff.

Charles G. Williams and J. B. Cassoday, for defendant.

Before DAVIS, Circuit Justice, and HOPKINS, District Judge.

DAVIS, Circuit Justice (charging jury). This case has been tried with eminent ability, and it becomes the duty of the court before you pass upon it, to aid you, within legal rules, in reaching a proper conclusion. This action is for printed slander, which has always been regarded as a much higher offense than where the defamatory words were merely spoken. In written, or printed slander, the act is more deliberate than barely speaking the words. and the injury resulting from the publication more serious and mischievous. On this account, written or printed slander is punishable by indictment, as well as by civil action, which is not the case with oral slander.

A publication without justification or lawful excuse, which is calculated to injure the reputation of another, by exposing him to hatred or contempt, is a libel. The effect of the words used is the test of whether they are actionable or not, for the injury caused by the slander depends on the meaning which any reasonable man would give to the words on reading them. The ordinary sense of those words is to be taken as the meaning of the party who employs them. And if the import of the words, as they may be fairly understood by those who read them, is directly calculated to degrade the man in the estimation of his acquaintances, and to injure his business character, they are in themselves actionable, and do not require proof of malice, or that any special damage has resulted from their publication. for every one is presumed to intend the natural and necessary consequences of his own conduct. To say of a person that he is a professional swindler. is actionable, because every one would understand that the accusation was that he made a practice of defrauding others by imposition or artifice. And to accuse a man of bringing another to financial ruin, by his machinations, is libelous. Such a charge necessarily conveys the idea that the accused party, by contrivance, brought about this result, and is a serious damage to his reputation.

Whether the particular publication which is the subject of this inquiry is within the rules which we have laid down for your guidance, and therefore libelous. is a question upon which you are to exercise your judgment, and pronounce your opinion as a question of fact. The whole article is to be taken together in determining the character of it. It sets out with an account of a serious affray, in which the plaintiff and one Tompkins were

concerned, and which produced great excitement in the community of Janesville. The writer then says that this man Whitney (the plaintiff in this action) has figured rather conspicuously for some time past, to the disadvantage of the business interests of Janesville, and then proceeds to give an account of Whitney's dealings with S. C. Spaulding, Mr. Denell, W. L. Gookins and Tompkins, upon whom the assault was made, and after stating that Tompkins, while Whitney was absent, locked the store door, to prevent Whitney from packing up the goods until some sort of a settlement was effected, says: "This was the occasion of the assault which produced great excitement for a time, as the sympathies of the public are with the victims of this professional swindler." The article winds up as follows: "Mr. Whitney is a resident of New York city, and has his headquarters on Broadway. We understand that his ways are not as light as are those of good and honest men."

The account given by the writer of the occasion and circumstances attending this 'assault and battery are not complained of, and the evidence relating thereto offered by the defendant was excluded by the court, as not pertinent to the issue. This account, as an item of local news, if correctly given, could not be complained of.

It may be that Whitney may have been the aggressor in this assault, and may have violated the law, and behaved badly; but this did not authorize the writer to go outside of this transaction and compose an article reflecting injuriously upon Whitney's personal and business character unless the strictures were true. It is for the statements contained in this portion of the article that the plaintiff sues. Taking the whole article together, what does it mean, and what would men of ordinary intelligence understand by it? It is for the jury to say. Do the words used convey the meaning that Whitney was guilty of dishonest practices in his business dealings with the several persons mentioned? If so, unless they are true, the plaintiff has suffered, and is entitled to compensation for publication. It is true, there is no action for the words of mere general abuse, but do not these words import that Whitney dealt dishonestly with the persons named? Could the writer have meant to charge anything less than this, when he winds up his account of Whitney's transactions in Janesville, by stating that the sympathies of the public were with the victims of this professional swindler, and could the reader of the article have understood it in any other way?

Whether the reader of this article would understand the writer as intending to charge Whitney with swindling everybody with whom he had dealings, or only those persons who are named in the article, may admit of some question. It is for the jury to say whether this charge was meant and would be understood as being restricted to Whitney's dealings with Spaulding, Denell, Gookins and Tompkins. And it is for the jury to say whether or not the injury to Whitney is greater or less, according to the enlarged or restricted sense of these words, as they may find them to have been used. In connection with this point the closing part of the article is to be considered by the jury. It winds up, as we have seen, by stating the residence of the plaintiff, and that the writer understood "that his ways are not as light as those of good and honest men." Were these words meant, and would they be understood as applying to the Janesville transactions, or to the general character of the plaintiff? If the latter, then the jury are to say whether or not they convey a general charge of dishonesty, and are calculated still further to bring Whitney into disgrace and disrepute.

Does the whole publication hold the plaintiff up to reproach or disgrace in his business relations, either with specific persons or the public generally? If so, it is a libel. As we have stated, malice need not be proved; it will be implied if the charge is false. As malice is inferred from the falsity of the charge, so good motives will be implied from the truth of the charge. And this leads us to consider the defenses to this action. There can be but one perfect answer and bar to it, and that is that the publication is true. And the justification to be complete must be co-extensive with the slander. It is apparent from the evidence that the charge of general swindling and dishonest practices has not been sustained. Has it been sustained, if the jury believe the publication was meant and would be understood as limiting the charge to the dealings with the persons named in Janesville?

On this point there can be no doubt, for there is not a particle of evidence, to show that Whitney ever dealt unfairly with Spaulding or Denell, or had anything to do with the pecuniary embarrassments of either. Nor is there any evidence that he swindled Tompkins or dealt dishonestly with him. The most that can be said in regard to the evidence on this subject is, that there was a misunderstanding in relation to the time allowed to Tompkins, within which to determine whether or not he would buy the goods. There was no moral turpitude involved in the transaction. The defendants, then, having failed to show any improper dealings with Spaulding, Denell and Tompkins, were not justified in the charge which they made in relation to those dealings. The justification to be complete, must extend to every part of the defamatory matter, which could by itself form a substantive ground of action.

But by the law of this state, the defendants may prove, in mitigation of damages, such facts as tend to prove the truth of the charge and yet fall short of it. And it is in this view that the jury will consider the evidence relating to the dealings of Whitney with Gookins. It is not the purpose of the

court, in view of extended remarks by counsel on both sides, to comment on this evidence and explain it. It is one of the main features of the case, and presents a question of fact, on which the jury are peculiarly qualified to pass. If, on fairly considering the whole evidence bearing on this point, you are of opinion that there is nothing to impeach the fair dealing of Whitney with Gookins, then the libel in this particular is also false, and the offense of the publication of it is in no respect mitigated. On the contrary, if the jury believe, from the evidence, that Whitney was guilty of dishonest practices in his dealings with Gookins, and tried to cheat him, this will be weighed and considered by them in mitigation of damages. The evidence on the subject consists mainly of the testimony of the parties themselves. The jury should weigh all the facts and circumstances detailed by the parties, and say where the truth of the matter is. Mitigating circumstances are offered in evidence to repel the presumption of malice. Where this is the case it should be shown that the defendants knew of them at the time they made the charge. On this point, the jury will recollect the testimony given by the writer of the article and by Gookins, and reconcile it, if they can. If they are not able to do this, then to say what is the truth about it.

The plaintiff's general character is in issue in this action, and the defendants may show that the plaintiff's reputation has sustained no injury, because he had no reputation to lose. This they have endeavored to do by the deposition of two witnesses from New York, and this proof has been met by the deposition of four witnesses from there and by the oral testimony of one witness from this city.

We do not care to comment on this testimony, for the jury will recollect it. It is for you to say whether the attack made on the general character of the plaintiff has or has not been sustained. He is presumed to be of good character until the contrary is shown, and the burden of proof on this point is on the defendants. It is the plaintiff's general reputation taken as a whole, and not his reputation as to any particular act, or in any particular transaction, that is the subject of injury in determining this point. The jury will take the case and do justice between the parties.

The jury found a verdict for the plaintiff for eleven hundred dollars.

NOTE. A publication calculated to make the party infamous, odious, or ridiculous, is prima facie a libel, and implies malice. White v. Nicholls, 3 How. [44 U. S.] 266; Dexter v. Spear [Case No. 3,867]; Com. v. Clap, 4 Mass. 163; Gathercole v. Miall, 15 Mees. & W. 319. 344; O'Brien v. Clement, Id. 435. Rules of construction applicable to a libelous publication. Kerr v. Force [Case No. 7,730]. "Libel," defined. Hillhouse v. Dunning, 6 Conn. 391, 407; Steele v. Southwick, 9 Johns. 214; State v. Farley, 4 McCord, 317; Clark v. Binney, 2 Pick. 113; Cooper v. Greeley, 1 Denio, 347; Newbraugh v. Curry, Wright, N. P. (Ohio) 47. The whole publication, in connection with the circumstances, should be construed together. Graves v. Waller, 19 Conn. 90, 94. A malicious publication is held to be actionable, when speaking the same words would not be. Thorley v. Lord Kerry, 4 Taunt. 355; McClurg v. Ross. 5 Bin. 218; Fonville v. M'Nease, Dud. (S. C.) 303. Though an editor has the right to publish the fact that a person has been arrested, and upon what charge, he has no right to presume that he is guilty. Usher v. Severance, 2 Appl. 9. Aspersions upon an author's moral character, printed in a criticism on his books, are libelous. Cooper v. Stone, 24 Wend. 434. If the defendant intends to rely on the truth of the publication, either in bar or mitigation of damages, he must plead it specially. Barrows v. Carpenter [Case No. 1,058]; Stow v. Converse. 4 Conn. 17, 33; Mix v. Woodward, 12 Conn. 262. 289; Torrey v. Field, 10 Vt. 353; Shirley v. Keathy, 4 Cold. 29; Hagan v. Hendry, 18 Md. 177. In mitigation, the defendant may show the general bad character of plaintiff, and any fact which tends to disprove malice. Sheahan v. Collins, 20 Ill. 325; Maynard v. Beardsley, 7 Wend. 560; Young v. Bennett, 4 Scam. 43; B. v. L., 22 Wis. 372. The defendant's justification must be as broad as the charge. Skinner v. Powers, 1 Wend. 451; Brooks v. Bemiss, 8 Johns. 455; Stilwell v. Barter, 19 Wend. 487. The truth of the libel, when it does not negative the intention to defame the reputation of the plaintiff, cannot be shown in defense, but it may be shown that the purpose was justifiable. Com. v. Clap, 4 Mass. 163; Com. v. Blanding. 3 Pick. 304; and in Swift v. Dickerman, 31 Conn. 285, it is held, that the truth in an action of slander cannot be shown in mitigation of damages. If a plea of justification is made in good faith, evidence insufficient to prove it should be considered in mitigation. Thomas v. Dunaway, 30 Ill. 373. But if introduced for the purpose of further injuring plaintiff, they are an aggravation. Id. But mere failure to prove justification does not entitle the plaintiff to exemplary damages. Rayner v. Kinney, 14 Ohio St. 283. Where mitigating circumstances are offered in evidence to repel the presumption of malice. it should be shown that the defendant knew of them at the time he made the charge. Swift v. Dickerman, 31 Conn. 285. It is a general rule in actions of a criminal or quasi criminal nature, that evidence of general good character cannot be introduced, unless the opposite party has offered evidence attacking the character. Bracy v. Kibbe, 31 Barb. 273; Shattuck v. Myers, 13 Ind. 46; Reed v. Williams, 5 Sneed, 580.